## Armstrong's Appeal.    Breneman's Estate.

1. It is not a good assignment of error to say that "the court overruled the 1st exception," without setting out the exception.

2. Pleadings are as essential in a court of error as in the court below.

3. By the assignment, the plaintiff in error declares and defendant pleads whatever he chooses to rely upon.

4. Assignments of error should be filed of record; the paper-book is no. part of the record.

5. The wife of an administrator purchased land at his sale, made by order of the Orphans' Court; the sale was confirmed: afterwards the wife sold at an advance. *Held*, that the administrator could not be charged with the profit, there having been no fraud.

6. By the confirmation, the price with which the administrator should be charged, was judicially ascertained.

7. The sale was the act of the court, and within their power to set aside upon exceptions or a higher bid.

8. Demmy's Appeal, 7 Wright 169, Hays's Appeal, 1 P. F. Smith 58, adopted; Dundas' Appeal, 14 P. F. Smith 325, distinguished.

May 2d 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the Orphans' Court of *Lancaster county*: Of May Term 1871, No. 37 in the estate of Fanny Breneman, deceased.

The decedent died September 30th 1868, intestate, and administration of her estate was granted to Andrew Armstrong. His account was confirmed nisi, December 20th 1869; a number of exceptions were filed to the account by the other heirs, which with the account were referred to D. G. Eshleman and A. Slaymaker, Esqrs., as auditors. The 4th, which was the only one considered in the Supreme Court, was as follows:—

4. Accountant has not charged himself (and should be charged) with the difference between the price for which the real estate of

[Armstrong's Appeal.]

Fanny Breneman was bid in by Mary A. Armstrong, his wife, at the public sale held by him as administrator of Fanny Breneman's estate, viz., $7200 and the price for which he has since sold the same, viz., $190 per acre, amounting to the sum of $9396.68; said difference being $2196.68.

The facts which gave rise to this exception are these:—

·The decedent was the sister of Mary Armstrong, the wife of the administrator. The sisters as tenants in common, owned a tract of land in East Donegal township, Lancaster county, containing about 99 acres. Under proceedings in partition in the Orphans' Court and after refusal by the heirs to take the real estate at the valuation, the court on their application issued an order to the administrator to sell the decedent's interest in the land. The land was sold at public sale in the manner and upon the terms directed by the court, to Mrs. Armstrong for $7200. The report of the sale having been made to the court, was confirmed absolutely November 16th 1868. In the autumn of 1869, the *whole* tract was sold to Andrew Garber: the amount realized from this sale was $17,093.36, the half of which, $8546.68, being $1346.68 more than Mrs. Armstrong had given at the administrator's sale; with this sum the auditors said they felt themselves constrained to surcharge the administrator, although in their "opinion, the sale made to Mrs. Armstrong was entirely bonâ fide and untainted with fraud."

The administrator filed four exceptions to the auditors' report.

The court confirmed the report, and he appealed to the Supreme Court.

He there assigned errors as follows:—

"The court erred in overruling the 1st, 2d, 3d and 4th exceptions filed by the accountant, to the report of auditors, and in confirming the said report notwithstanding."

*D. W. Patterson* and *H. M. North*, for appellant, cited Davoe *v.* Fanning, 2 Johns. Ch. R. 25, 1 Cruise's Dig. 551; Snyder on Vendors 436; Dundas' Appeal, 14 P. F. Smith 325.

*G. M. Kline* (with whom was *J. B. Livingston*), for appellees, cited Chew's Appeal, 9 Wright 228; Price's Appeal, 4 P. F. Smith 472.

The opinion of the court was delivered, May 18th 1871, by

AGNEW, J.—The assignment of errors in this case is entirely defective. It is not a good assignment of an error to say that the court overruled the first exception, without setting out the exception itself. Pleadings are as essential in a court of error as in the court below. The assignments of error serve the same purpose in the former as a declaration in the latter; to place in the

record and before the court the very issue to be determined. Hence the plaintiff in error, by his assignment as it is termed, declares, in the record itself, what error it is he complains of. To this the defendant replies *in nullo est erratum*, or any other plea which he chooses to rely upon. For instance he might reply a release of errors, or the Statute of Limitations of seven years to taking out a writ of error. I should not have thought of mentioning what every lawyer ought to know, but for the surprising fact brought out in a case before us last week, that it is a common practice in this district to file no assignments of error of record, but to argue the case upon those contained in the printed paper-book. The paper-book is no part of the record, but a convenient mode only of presenting the case for the consideration of the judges. We might therefore refuse to consider any of the errors attempted to be assigned in this case, but we shall proceed to notice one of grace and not of right.

We think the auditor and court below erred in surcharging the administrator in his account with the sum of $1346.68, money which never came into his hands, but which it is supposed he ought to have made by the sale under the order of the Orphans' Court. The accountant sold the real estate of the decedent under an order of the Orphans' Court of Lancaster county, upon proceedings in partition among the heirs who had refused to accept the premises. The sale was regularly made, returned and confirmed; no exceptions having been made to it by the heirs. Mrs. Armstrong, the wife of the administrator, became the purchaser at a fair and open public sale. The auditor finds that the transaction was perfectly fair and without fraud. The legal disability of Mrs. Armstrong as the wife of the administrator to become the purchaser at her husband's sale, is the only ground upon which the surcharge took place. But the question of trust in her purchase is not an element in the present case. This is an attempt to surcharge the administrator in the settlement of his account and not to recover the property or set aside the sale. There being no actual fraud, and the sale having regularly passed through the Orphans' Court and been confirmed by it, the price obtained for the property has been judicially ascertained. The heirs were parties to the proceeding, and directly interested in it. The sale was the act of the court, the administrator being only the hand of the court in making it. It was therefore wholly within the power of the court, and could be set aside upon their exception and even upon an offer of a higher bid for the property. This is definitively settled in Demmy's Appeal, 7 Wright 168, and Hays's Appeal, 1 P. F. Smith 58. Indeed we decided last winter in Philadelphia that a sale confirmed might be opened for a higher bid in the discretion of the court, taking care to make the purchaser whole for any loss sustained: Brown's Appeal, antea, p. 35. The reasons

[Armstrong's Appeal.]

are so well set forth by Justice Strong in the cases above cited, nothing more need be said on this point. Such a sale as this differs wholly from the case of a sale by an executor or trustee under a *power* contained in a will or deed. Hence the case of Dundas' Appeal, 14 P. F. Smith 325, referred to by the auditors, is inapplicable, no confirmation by the court being necessary in a sale under an express power. But even in that case we held the power of the Orphans' Court under the jurisdiction conferred in the Acts of 1832 and 1836, was adequate to the correction of irregularities in such a sale. As to the conclusiveness of the decrees of the Orphans' Court nothing need be said. The books are full of cases, especially modern decisions, establishing this principle. The report of the sale by the administrator and of the price brought by it, followed by confirmation by the Orphans' Court, conclusively establishes, in the absence of fraud, the sum with which the administrator shall be charged; otherwise he would be left wholly unprotected, and compelled years afterward on a settlement of his account to defend the sale, when witnesses may be absent or dead, and the evidence lost.

The decree of the Orphans' Court is therefore reversed as to this item of surcharge of $1346.68—the surchage stricken out of the account, and the record remanded to the Orphans' Court with directions to proceed according to law; and the costs of the appeal are ordered to be paid out of the estate.